UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:24-CV-0050-CRS

HAROLD EUGENE HAYES                                                    PLAINTIFF

v.

BRAD BARTHULY, *et al*                                               DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This case is a civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff, Harold Hayes, has sued three prison guards as a result of suffering an inmate-on-inmate assault. The assault took place on August 16, 2023 at the Kentucky State Penitentiary. Based on events that occurred before and during the assault, Hayes alleges that the defendants violated his Eighth Amendment rights. More specifically, he claims that defendants Emily Aguilar and Brad Barthuly failed to protect him from the assault and that defendant Delvin Nielsen who deployed his taser to stop the assault used excessive force because one of his darts hit an indisposed Hayes in the leg. Apart from those claims, Hayes has asserted a First Amendment, retaliation claim against Nielsen. He alleges that Nielsen permanently confiscated some personal property because Hayes sued him.

The defendants have moved for a summary judgment on all of Hayes' claims. Among other grounds for a judgment, they maintain that Hayes failed to administratively exhaust his claims which requires their dismissal. The undisputed record shows that Defendants are correct. Hayes did not comply with the applicable administrative policy for grieving his claims which means that Hayes failed to properly exhaust them. As a result, the Court will grant the defendants' summary judgment motion. Further, as Hayes' failure to exhaust is dispositive, the Court declines to address the defendants' remaining arguments. Lastly, Defendants also filed two Motions to Seal (DN 58) and (DN 59). Hayes did not object to those Motions, so they will be granted.

## BACKGROUND AND PROCEDURAL HISTORY

Kentucky Corrections Policies and Procedures include an administrative grievance procedure for use by inmates housed in Kentucky prisons. That procedure is set out in Section II, Subsection J of Policy No. 14.6 ("Policy 14.6").[1] The procedure consists of four steps. In this case, the pertinent procedural requirements are a part of Step 1 which sets out the requirements for preparing and fling a grievance. Those requirements include the deadline for filing a grievance related to a specific incident as well as what information a grievance must include. Grievances must contain "all aspects of the issue and identify all individuals in the Brief Statement of the Problem so that all problems concerning the issue or individuals may be dealt with during step 1."[2] As for timing, grievances "about a personal and specific incident" must "be filed within five (5) business days after the incident occurs."[3] These rules governed Hayes' retaliation claim as well as claims related to the August 16, 2023 inmate-on-inmate attack.

The attack took place in Hayes' cell at the Kentucky State Penitentiary. After entering Hayes' cell, inmates Maggard and Spence beat and stabbed Hayes. Verbal commands and pepper spray were used in efforts to stop the attack but those efforts failed.[4] So defendant Nielsen resorted to his taser. He deployed it twice. The first deployment did not stop the attack but the second one did. At some point, one of Nielsen's darts hit Hayes in the leg.[5] As a result of Maggard and Spence's attack, Hayes sustained approximately fifty stab wounds. He was sent to Baptist Hospital

---

[1] 01/21/26 Affidavit of Kentucky State Penitentiary Grievance Coordinator Robin McCalister at ¶ 2; DN 57-4 at PageID# 235; 01/21/26 Affidavit of Little Sandy Correctional Complex Grievance Coordinator Rhonda May at ¶ 2, DN 57-5 at PageID# 267; Policy No. 14.6, DN 57-5 at PageID# 271-92.
[2] Policy No. 14-6 at § II(J)(1)(a)(4); DN 57-5 at PageID# 278.
[3] *Id.* at § II(J)(1)(a)(2), DN 57-5 at PageID# 278.
[4] 08/16/2023 Incident Report Summary, DN 62-3 at PageID# 340.
[5] 08/16/2023 Information Report by Nielsen, DN 62-3 at PageID# 361; Amended Complaint, DN 17 at PageID# 73 (explaining that first taser deployment did not stop the attack but second deployment succeeded).

in Paducah, Kentucky.[6] After his initial hospitalization, Hayes was transferred to University of Kentucky Hospital in Lexington, Kentucky.[7] On August 21, 2023, Hayes was released from the University hospital and taken to the Little Sandy Correctional Complex.[8]

On November 3, 2023, while at Little Sandy,[9] Hayes filed a grievance related to the August 16, 2023 attack.[10] For his Brief Statement of the Problem, Hayes stated:

> On this date 8-16-23 K.S.P. allowed me to be forced into a "cruel and unusual punishment" situation. By letting two inmates come into "my singal [sic] cell" and cause bodly [sic] harm to me by stabing [sic] me 50 times and 7 larcases [sic] to my body. That caused me to go to a outside hospital with two colapsed [sic] lungs and transfered [sic] to another institution. I feel this is any way this should happen in a super max. penety [sic].[11]

Hayes' Grievance was rejected as untimely.[12]

In this lawsuit, Hayes alleges that defendant Aguilar, who was guarding his cellblock at the time, failed to protect him because she could have but did not prevent Maggard and Spence from entering Hayes' cell.[13] Similarly, Hayes alleges that Barthuly failed to protect him because two weeks before the assault, a former gang member told Barthuly that Hayes might be stabbed but Barthuly took no action.[14] Hayes also alleges that Nielsen's taser-use constituted excessive force given Hayes' injured state: "In my right leg a tazor [sic] was deployed while I'm on the floor bleeding badly and could not breath [sic]."[15] Apart from these incident-related claims, Hayes has sued Nielsen for retaliation. Hayes alleges that at some time after May 16, 2024, Nielsen

---

[6] 08/18/23 Occurrence Report by Berton Bare, DN 62-3 at PageID# 365 (Hayes "had approximately 50 stab wounds" and was taken to Baptist Hospital in Paducah); McCalister Aff. at ¶ 3, DN 57-4 at PageID# 236 (Hayes was transported to Baptist Hospital in Paducah); May Aff. at ¶ 3, DN 57-5 at PageID# 268 (same).

[7] McCalister and May Affidavits at ¶ 3, DN 57-4 at PageID# 236, DN 57-5 at PageID# 268.

[8] Id.

[9] Id. (attesting to Hayes' being housed at Little Sandy until November 21, 2023).

[10] Grievance, DN 62-3 at PageID# 397; DN 57-5 at PageID# 301(the "Grievance" or "Hayes' Grievance").

[11] Id.

[12] Rejection Notice, DN 62-3 at PageID# 395; May Aff. at ¶ 7, DN 57-5 at PageID# 269.

[13] Amended Complaint, DN 17 at PageID# 72-73, 74.

[14] Id. at PageID# 72.

[15] Id. at PageID# 73.

3

permanently confiscated his t.v. and commissary because Hayes sued him.[16] Hayes had filed his original Complaint on March 24, 2024.

On January 26, 2026, Defendants moved for a summary judgment on all of Hayes' claims.[17] In connection with that Motion, the Court ordered Hayes to file a response.[18] In that Order, the Court told Hayes that he must

> . . . **support his facts with affidavits (his own statement or witness statements, either sworn or signed under penalty of perjury) and/or other documents contradicting the material facts asserted by Defendants.** Otherwise, the Court may accept Defendants' facts as true and grant judgment in favor of Defendants without a trial.**[19]**

The Court gave Hayes until March 23, 2026 to file his response to Defendants' Motion.[20]

On March 9, 2026, Hayes filed an untitled brief, DN 62, along with additional documents. First, Hayes included an "Appendix," DN 62-1. The Appendix describes the rest of the documents that Hayes included with his untitled brief. The first of these documents is titled "Memorandum In Support of Summary of Judgement [sic]."[21] The rest of the documents consist of four sets of exhibits. They are (1) documents related to Aguilar, (2) documents related to Nielsen, (3) documents related to Barthuly and (4) Hayes' Grievance and the Notice of its rejection.[22] Hayes' untitled filing suggests that it is a motion for summary judgment, as does his Memorandum's title. However, the body of his Memorandum shows that the filing is Hayes' opposition to Defendants' Motion. This is most evident from the relief Hayes requests:

> Therefor [sic] Plaintiff asks honorable court to move forward with Plaintiffs [sic] Summary of Judgement [sic] and set this for a timely remody [sic] between Plaintiff and Deffendants [sic], then move forward to a Jury Trial.[23]

---

[16] *Id.* at PageID# 74-75.
[17] Motion for Summary Judgment, DN 57 at PageID# 196.
[18] 02/19/26 Order, DN 61.
[19] *Id.* at PageID# 324 (emphasis in original).
[20] *Id.*
[21] Appendix, DN 62-1 at PageID# 331.
[22] *Id.* Hayes states that he filed 62 pages, but he did not file pages 56-59. *See id.* at PageID# 394-95.
[23] Hayes' Memorandum, DN 62-2, at PageID# 338-39.

Elsewhere and likewise, Hayes asks the Court to "make my Summary stand and move forward to a jury trial."[24] Also, Hayes' statements show that his untitled filing is his attempt to dispute Defendants' statement of facts: "Plaintiff's Summary is 100% true . . . and all of Defendants['] statements contradict [themselves]."[25]

Taken together, Hayes' untitled brief and his subsequent filing reveal two things. First, he wants the Court to deny Defendants a summary judgment. Second, he contends that this case should "move forward" to a jury trial on the ground that the facts he has presented are true and the facts presented by Defendants are self-conflicting. Given these circumstances, the Court has considered Hayes' filing as his response to Defendants' Motion, *i.e.*, as his effort to prevent a summary judgment in favor of Defendants. Hayes' effort falls short, however. He cannot proceed to a jury trial because the undisputed record of material facts—a record to which he has agreed or failed to dispute—shows that Hayes did not exhaust his administrative remedies.

## APPLICABLE LAW

### A. The Summary Judgment Standard

The party who moves for a summary judgment with respect to a claim or a defense "bears the initial responsibility of informing the district court of the basis for its motion" and identifying those materials in the record "which it believes demonstrate the absence of any issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a). Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue, *i.e.* that a jury could find in the non-moving party's favor. *Anderson v.*

---

[24] "Reply to Defendants Motion for Construed Response to Plaintiff's Summary Judgement [sic]," DN 65.

[25] *Id.* at PageID# 406-07. Hayes does not dispute all the facts relayed by Defendants. Rather, he acknowledges his partial repetition of their briefing and suggests that such similarities should be no surprise: "Is it or is it not that the plaintiff and/or [Defendants' counsel] is supposed to work 'Together' to obtain materials . . ." *Id.* at PageID# 406.

*Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Mosholder v. Barnhardt,* 679 F.3d 443, 448–49 (6th Cir. 2012) (citations omitted). At the same time, the court is not required to search the record. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, the non-movant must come forward by way of affidavits and/or other record evidence of specific facts that create a genuine dispute. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). A "mere scintilla of evidence in support of the non-moving party's position will not be sufficient . . . ." *Sutherland v. Mich. Dept. of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003) (citing *Anderson*, 477 U.S. at 251). Finally, the fact that Hayes is proceeding *pro se* does not lessen his obligations as the nonmovant. *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citation omitted); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) ("pro se plaintiffs are not automatically entitled to take every case to trial").

**B. The Prison Litigation Reform Act**

The Prison Litigation Reform Act is the dispositive, governing law in this case. It is frequently referred to as the "PLRA" and requires all inmates to exhaust "such administrative remedies as are available" before they may file suit in federal court. 42 U.S.C. § 1997e(a); *Richards v. Perttu*, 96 F.4th 911, 916 (6th Cir. 2024) (given PLRA, prisoner may not sue under 42 U.S.C. § 1983 unless he has first exhausted available administrative remedies). The "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). At the same time, it is the prison's procedural rules that "define the boundaries of proper exhaustion," not the PLRA. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Accordingly, to exhaust their administrative remedies, inmates must use "all the steps that the agency holds out" and must do so "*properly*." *Woodford v. Ngo*, 548 U.S. 81, 90

6

(2006) (emphasis in original). That is, inmates must "complete the administrative review process in accordance with the applicable procedural rules" of the prison. *Id.*

Next, while the PLRA mandates exhaustion, an exception exists: inmates need not exhaust *unavailable* administrative remedies. *Ross v. Blake*, 578 U.S. 632, 642 (2016). Administrative remedies are "unavailable" under the following circumstances:

> (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates";
>
> (2) when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it" because it is "so opaque" or "so confusing"; and
>
> (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Lamb v. Kendrick*, 52 F.4th 286, 292-93 (6th Cir. 2022) (quoting *Ross*, 578 U.S. at 643-44). Even so, an inmate may rely on the excuse of unavailability only if he first demonstrates that he made "affirmative efforts" to comply with the prison's grievance procedures. *Id.* at 293. Finally, aside from the unavailability exception, "a court may not excuse a failure to exhaust, even to take [special] circumstances into account." *Ross,* 578 U.S. at 639 (citation omitted).

## ANALYSIS

As previously noted, Defendants assert that Hayes failed to properly exhaust his claims. Failure to exhaust administrative remedies is an affirmative defense; thus, the defendants bear the burden of proof on this issue. *Napier v. Laurel Cnty.,Ky.*, 636 F.3d 218, 225 (6th Cir. 2011). As a result, summary judgment is appropriate only if the defendants "establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (internal quotation marks and citation omitted). Defendants maintain that the proof they have presented meets this standard. More particularly, Defendants contend that Policy 14.6 required Hayes to file a grievance within 5 business days of his release from the University

hospital, to identify each of the defendants, and to state the nature of his present claims as against each of them. Defendants contend that Hayes did none of things, which means he failed to properly exhaust his claims and they must be dismissed.

Defendants have supported their argument with two affidavits: (1) the Affidavit of Robin McCalister who is a Grievance Coordinator at the Kentucky State Penitentiary and (2) the Affidavit of Rhonda May who is a Grievance Coordinator at Little Sandy. McCalister and May each testified from personal knowledge as to the applicability of Policy 14.6 and its requisites.[26] Each of them attached a copy of Policy 14.6 to her affidavit.[27] Each of them also testified to having searched "the grievance records" at the Kentucky State Penitentiary and Little Sandy (respectively) "for grievances filed by inmate Harold Hayes" with respect to the claims and allegations against the defendants to this lawsuit.[28] McCalister did not find any such grievances filed by Hayes.[29] May located only the November 3, 2023 Grievance.[30] She testified to its contents and attached a copy of that Grievance.[31]

Defendants maintain that McCalister's and May's affidavit testimony establishes that Hayes did not exhaust his claims because they establish that Hayes did not comply with the prisons' procedural rules: (1) Hayes did not identify either Aguilar, Barthuly or Nielsen in his November 3, 2023 Grievance; (2) Hayes did not allege that he was subjected to excessive force; (3) Hayes did not allege that anyone ignored a known risk to Hayes' safety; and (4) Hayes did not allege that anyone retaliated against him.[32] Defendants also contend that although Hayes could not file a grievance while hospitalized, he could have filed and was required to file within five business

---

[26] McCalister Aff. at ¶ 2, DN 57-4 at PageID# 235-36; May Aff. at ¶ 2, DN 57-5 at PageID# 267-68.
[27] DN 57-4 at PageID# 239-66; DN 57-5 at PageID# 271-98.
[28] McCalister Aff. at ¶¶ 3-11, DN 57-4 at PageID# 236-38; May Aff. at ¶¶ 3-7, DN 57-5 at PageID# 268-69.
[29] McCalister Aff. at ¶¶ 4-11, DN 57-4 at PageID# 236-38.
[30] May Aff. at at ¶¶ 4-7, DN 57-5 at PageID# 268-69.
[31] *Id.* at ¶ 7, DN 57-5 at PageID# 269.
[32] Defendants' Memorandum, DN 57-1 at PageID# 206-09.

days after he arrived at Little Sandy, *i.e.*, on or before August 28, 2023.[33] Hayes did not do so, waiting to file until November 3, 2023. Thus, according to Defendants, the undisputed record shows that Hayes did not comply with the prisons' procedural rules which means he failed to exhaust his claims.[34]

For his part, Hayes does not dispute the applicability of Policy No. 14.6 or its requirements. Nor does he dispute the fact that he filed a single grievance, the content of that grievance, or the date he filed it. In fact, Hayes' response does little to address Defendants' failure-to-exhaust argument. Hayes states only this:

> Plaintiff was transfered [sic] to another inst[i]tution and was put in Medical there. I ask for Grievance to file and they told me I could when they let me out of Medical, that time fram [sic] only counts when in RHU or on the yard, so I filed Grievance in R.H.U [sic] on 11-3-23. See pg. 60-62 of Summary Judgement [sic] so therefor [sic] Plaintiff shows supportive effort that he tried to resaolve [sic] all/or any remediess [sic].[35]

Pages 60-62 of Hayes' response consist of his November 3, 2023 Grievance and the Notice of its rejection.[36] Of note, these pages are copies of the same documents May identified and attached to her Affidavit as comprising the only grievance she found which was filed by Hayes and which pertained to the August 16, 2023 assault.[37] Hayes agreed, describing these pages as comprising "Any and/or all of relief through the Gri[e]vance process."[38] Thus, what Hayes' administratively filed with respect to the August 16, 2023 attack is undisputed: a single grievance, which was filed on November 3, 2023 and which attributes fault to no one in particular.

---

[33] *Id.* at PageID# 209.
[34] *Id.* at PageID# 209-10.
[35] Hayes' Memorandum, DN 62-2 at PageID# 338.
[36] DN 62-3 at PageID# 395-97.
[37] *Id.* (Showing header for DN 57-5 appears at the top of each page).
[38] Hayes' Appendix, DN 62-1 at PageID# 331.

At the same time, the content that Hayes was required to include in order to properly grieve his claims is also undisputed, being set out in Policy 14.6. The policy required Hayes "to identify all individuals" involved in the incident and to include "all aspects" of the issue(s) arising from it.[39] Without dispute, Hayes did not do so. Again, in his Brief Statement of Problem, Hayes stated only this:

> On this date 8-16-23 K.S.P. allowed me to be forced into a "cruel and unusual punishment" situation. By letting two inmates come into "my singal [sic] cell" and cause bodly [sic] harm to me by stabing [sic] me 50 times and 7 larcases [sic] to my body. That caused me to go to a outside hospital with two colapsed [sic] lungs and transfered [sic] to another institution. I feel this is any way this should happen in a super max. penety [sic].[40]

While Hayes described the August 16, 2023 assault and alluded to a failure to protect him, he did not name any of the individual defendants to this action. He did not allege that it was Aguilar who failed to protect him by letting the inmates into his cell. There is no mention of Barthuly or Nielsen and no mention of taser use or a pre-attack threat to Hayes—the grounds for his excessive-force claim against Nielsen and his failure-to-protect claim against Barthuly, respectively. That is, Hayes did not identify the individuals involved and did not state all aspects of the issues arising from the August 16, 2023 attack. Thus, there is no issue of material fact as to whether Hayes properly exhausted claims that relate to that attack. He did not do so.

First, "a plaintiff generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures." *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011)*; Arbuckle v. Bouchard,* 92 F. App'x 289, 290 (6th Cir. 2004) (affirming dismissal where prisoner's grievance did "not name anyone in particular as being responsible for his mistreatment"). Undoubtedly, as set out above, Policy 14.6 required

---

[39] Policy 14.6 at § II(J)(1)(a)(4), DN 57-5 at PageID# 278; May Aff. at ¶ 2, DN 57-5 at PageID# 267.
[40] 11/03/23 Grievance, DN 62-3 at PageID# 397.

10

Hayes to include the defendant-officials' names. Second, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90. Here, the rules required Hayes to include "all aspects" of the issues arising from the August 16, 2023 incident so that they could be dealt with at Step 1 which includes reaching an informal resolution.[41] Again, while Hayes' grievance suggests a failure to protect, it is not plain that he was accusing the on-duty cellblock guard of doing so. Nor did Hayes raise issues of excessive force or failure-to-protect-from-a-known threat.

That leaves Hayes' retaliation claim. Hayes claims that sometime after May 16, 2024, Nielsen confiscated his t.v. and commissary in retaliation for filing this lawsuit:

> On May 16th 2024 (Plaintiff's) property was packed up to be stored in property due to being placed in a restrictive unit. Corr. Sgt. Neilson [sic] (Defendant) is the poperty officer here at Kentucky State Pennitentairy [sic] and also is (defendant) in the aboved [sic] case. During the time the property was stored in the possession of Property Officer Sgt. Neilson [sic], (Plaintiffs [sic] TV and commasary [sic] came up missing. When (Plaintiff) asked Sgt. Neilson [sic] about it, Sgt. Neilson [sic] stated "don't file a lawsuit on me." Officer Sgt. Neilson [sic] also violated my 1st Amendment right by retaliation."[42]

The undisputed record shows that Hayes never filed a grievance based on such allegations. McCalister has testified as follows:

> I was asked to determine whether inmate Hayes filed a grievance against KSP Correctional Sergeant Delvin Nielsen alleging that on or after May 1, 2024 Nielsen disposed of Hayes' TV and commissary items in retaliation for Hayes having filed the present lawsuit against Nielsen.
>
> I examined the logs of all grievances accepted and rejected from May 1, 2024 to the present. Inmate Hayes did not file any grievances regarding the allegation against Nielsen for retaliation, nor any grievances identifying Nielsen by name.[43]

---

[41] Policy 14.6 § II(J)(1)(a)(4), DN 57-5 at PageID# 278.
[42] Amended Compliant, DN 17 at PageID# 74-75.
[43] McCalister Aff. at ¶¶ 10-11, DN 57-4 at PageID# 237-38.

Hayes has not presented evidence that undermines or controverts McCalister's testimony. In fact, Hayes' response omits any discussion as to whether he exhausted his retaliation claim. As result, the undisputed record shows that Hayes never invoked the grievance process with respect to his retaliation claim. Thus, he did not exhaust his administrative remedies with respect to this claim. *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (inmate does not exhaust available administrative remedies when he "entirely fails to invoke the prison's grievance procedure.").

The Court's inquiry would generally end here. However, Defendants have argued that Hayes failed to exhaust because he failed to timely file his Grievance. Specifically, they contend that Hayes could have filed within five business days of his release from the hospital to Little Sandy.[44] Defendants did not support this claim with proof, however. Neither McCalister nor May testified in a manner that permits such a conclusion. Instead, each simply testified to the dates on which Hayes was transported from the Kentucky State Penitentiary, from there to Baptist hospital, from there to the University hospital, from there to Little Sandy and then back to the Penitentiary. They otherwise describe how the grievance process works and what is required. Neither of them testified as to the availability of the procedure to Hayes upon arrival at Little Sandy. Thus, as to timeliness of Hayes' Grievance, Defendants did not carry their burden of proof.

Nevertheless, Hayes has suggested that he did his best to timely file a grievance with respect to the August 16, 2023 attack but staff prevented a timely filling or, at the very least, misrepresented the time he had in which to file. Hayes claims that upon transfer to Little Sandy, he asked "for a Grievance to file and they told me I could when they let me out of Medical, that time fram[e] only counts when in RHU or on the yard so I filed Grievance in R.H.U [sic] on 11-3-23."[45] Like Defendants, Hayes did not support these assertions as to what he was told with any

---

[44] Defendants' Memorandum, DN 57-1 at PageID# 209.
[45] Hayes' Memorandum, DN 62-2 at PageID# 338.

12

evidence. He did not testify to them by affidavit or point to any other record evidence to support them. As a result, he has not come forward with evidence which shows there is a genuine dispute about the timelines of his Grievance.

Nor can Hayes claim ignorance of the need to do so. The Court advised Hayes it was necessary to support his facts with such evidence. 02/19/26 Order, DN 61. Hayes simply did not heed that warning. Thus, there is no record evidence on which to find that any alleged untimeliness could be excused. Even if the Court were to simply accept Hayes' assertions as true, they would not rescue his claims. Hayes' assertions do not rectify his failure to include all issues arising from the August 16, 2023 incident or his failure to identify the defendants. Nor do they bear on Hayes' failure to invoke the grievance procedure with respect to his post-lawsuit retaliation claim. All these failings independently require the conclusion that Hayes did not properly exhaust his claims. Thus, even if Hayes could be excused with respect to timeliness, there is no basis on which to excuse his other failures to comply with Policy 14.6.

## CONCLUSION

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without  imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at  90–91. Hayes did not comply with the applicable procedural rules in this case. As for his claims arising from the August 16, 2023 attack, his Grievance did not name Aguilar with respect to his claim that it was she who let Maggard and Spence into his cell. Nor did Hayes implicate either Barthuly or Nielsen. He did not name those defendants and he did not allege that there was an excessive-force issue or a failure-to-protect issue given a known threat. Policy No. 14.6 clearly required Hayes to include such content. It also required Hayes to grieve his post-lawsuit retaliation claim. He did not do so. These facts are undisputed, and they require the conclusion that Hayes did not properly exhaust his

claims. No reasonable juror could disagree. Thus, Defendants are entitled to a judgment and Hayes cannot proceed to a trial. Accordingly, by a separate order and judgment entered simultaneously herewith, the Court will grant Defendants' summary judgment motion (DN 57) and enter a judgment in their favor as to all claims by Hayes.

Finally, the Court hereby **GRANTS** Defendants' Motions to Seal **(DN 58** and **DN 59**). Accordingly, the flash drive proffered as Exhibit A to the Affidavit of defendant Aguilar (DN 57-2) and proffered as Exhibit A to the Affidavit of defendant Nielsen (DN 57-3) **shall be maintained under seal**.  **IT IS ORDERED.**

August 4, 2026

**Charles R. Simpson III, Senior Judge**
**United States District Court**

14